UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Jerome Curry,

              Plaintiff,

  -V-

Dr. Jadow Rao, Health Director
of Attica Correctional Fac.;
R. Killinger, Nurse Administrator
of Attica Correctional Fac;
Jennifer Wrest, RN, NP of Attica
Correctional Facility.

              Defendants.
_____

10 CV 616

**COMPLAINT**



### CIVIL RIGHTS COMPLAINT
### WITH A JURY TRIAL DEMANDED

    1. This is a Section 1983 Action filed by Jerome Curry, pro se, a State prisoner alleging violation of his State and Federal Constitutional rights and seeking money damages. The Plaintiff request a Jury trial.

### STATEMENT OF JURISDICTION

    2. This is a Civil Action seeking relief and damages to defend and protect the Rights guaranteed by the Constitution of the United States. This action is brought pursuant to 42 U.S.C. Section 1983. The Court has jurisdiction over the action pursuant to 28 U.S.C. Section 1331, 1343(3) and 2201.

## PARTIES TO THIS ACTION

Plaintiff:

3. Plaintiff, Jerome Curry 98-A-6098, is a prisoner of the State of New York and currently imprisoned at the Attica Correctional Facility, p.o.Box 149, Attica, N.Y. 14011-0149.

Defendants:

4. Defendant Dr. Jadow Rao, is and was the Health Care Director and Head Doctor of Attica Correctional Facility, is and was at all relevant times herein responsible for the operation and management of the Health Care Unit of said facility, and in charge of ensuring that all the medical needs of prisoners were met. The decision as to whether plaintiff was provided with adequate medical care rested in his hands. He is ultimately responsible for the trianing and supervision of the medical personnel employed at Attica Correctional Facility. He is being sued in his individual and official capacities.

5. Defendant R. Killinger, is the Nurse Administrator of Attica Correctional Facility, is and was at all relevant times herein responsible for the operation and management of the Health Care Unit of said facility, and in charge of ensuring that the medical needs of prisoners were met. She is ultimately responsible for the training and supervision of the medical

personnel employed at Attica, the decision as to whether plaintiff was provided with the adequate medical care he needs rested in her hands. She is sued in her individual and official capacities.

6. Defendant Jennifer Wrest, is and was a Registered Nurse and N.P. of Attica, is and was at all relevant times herein responsible to assist and provide medical attention in the Health Care Unit of said facility, and was ordered to examine plaintiff to verify his injuries and determine whether if in the past he has been provided the requested medical treatment and/ or Orthopedic/medical boots and whether his medical needs required plaintiff to be provided such treatment. She is sued in her individual and official capacities.

7. Plaintiff used the grievance procedure in this facility to try to resolve the problems. On November 4, 2009, and April 27, 2010, plaintiff submitted two(2) grievances in Attica explaining his situation and requesting assistance, appeals to these grievances were also submitted, however, plaintiff encountered some difficulties in appealing his Nov. 4, 2009 grievance to C.O.R.C. due to the fact that the decision rendered by the facility Superintendent dated November 24, 2009, was sent(mailed) to the wrong cell location after plaintiff was moved from one housing unit to another(from B-18-38 to C-32), therefore, preventing plaintiff from adequately appealing said grievance to C.O.R.C. because by the time he received a copy of the grievance decision it was beyond the legal time frame to appeal to C.O.R.C.

8. The decision rendered by the grievance office with regards to the Nov. 4th, 2009 grievance was that "<u>According to RN NA1, the request for medical boots was submitted and is awaiting approval. You may check with the nurse for final approval</u>". However, when plaintiff checked with the nurse he was told that as far as she knew no request for medical boots was submitted by the Health Care Unit. The decision rendered by the grievance office with regards to plaintiff's April 27th, 2010 grievance was completely different from the decision given in his initial grievance. The decison to the second grievance of April 27th, 2010, was that "<u>According to RN NA1 grievant was approved to receive special boots, but also that there is documentation that there may be a nine(9) month delay. This is due to the lenght of the manufacturing process and shipment overseas</u>". This decision was appealed to the Facility Superintendent and C.O.R.C., but no decision has been received by C.O.R.C.

## PREVIOUS LAWSUITS IN STATE OR FEDERAL COURT

9. Plaintiff <u>had another lawsuit in Federal Court dealing with the same facts involved in this action</u> which in 2008 resulted in an out-of-court settlement, Index No. 04-CV-649(CJS). Plaintiff has also had another Federal lawsuit which did not deal with the same facts involved in this lawsuit in 2001, which also resulted in an out-of-court settlement, Index No. 00-Civ-4706(DLC).

## STATEMENT OF CLAIM

10. On July 3, 2007, Plaintiff arrived a Attica Correctional Facility from SouthPort Correctional Facility, when he arrived in Attica he was wearnig his prescribed Orthopedic(Medical) boots, plaintiff also carried with him a copy of a medical permit provided him by Dr. John Alves, M.D., F.H.S.D. and the Deputy Superintendent of Security of SouthPort Correctional Facility, and another permit issued at Great Meadow Correctional Facility which were the facilities from which Plaintiff departed from. Said permits are provided to prisoner by the medical and Security personnel of a Facility so as notify the Medical and Security personnel of the receiving Facility that the prisoner is authorized to wear Orthopedic boots due to a medical necessity. However, the medical permits carried by Plaintiff were disregarded and upon his arrival at Attica Correctional Facility his Orthopedic/Medical boots were confiscated allegelly because the medical boots were over six(6) inches high.

11. After the Orthopedic boots were unjustifiably confiscated plaintiff decided to use the wait-and-see approach for approximately five(5) months in an attempt to resolve the issue by simply bringing it to the attention of the medical and security personnel. Plaintiff began requesting to be provided with his Orthopedic boots on December 10th, 2007, so as to prevent and /or reduce the constant sharp pain and discomfort on his injured right foot and ankle which is the

result of a gun-shot wound that damaged the nerves and tendons. Plaintiff used the sick-call procedure numerous times to inform the Nurse that due to the injury he has been wearing Orthopedic/special boots even prior to his incarceration and was prescribed Orthopedic/Medical boots by DOCS shortly after being committed to the New York State Department of Correctional Services(5-19-2000).

12. Plaintiff continued to take additional steps to obtain his Orthopedic/medical boots by contacting Security. In fact on 9-25-2009, plaintiff contacted Ms. Whoeler, the Deputy Superintendent of Administration and Mr. P. Chappius, the Deputy Superintendent of Security, but neither one of them responded to Curry's letters, instead, Seargent Corcoran was sent to interview Plaintiff and told him that he had personally contacted the medical personnel and they told him that plaintiff had been provided with a pair of Orthopedic/medical boots on or about March 5 or April 9, 2008, however, when plaintiff was finally seen by the Orthopedic/Orthodic specialist it was confirm that this was incorrect, as a matter of fact plaintiff has not yet been provided with his medical boots.

13. On 9-25-2009, Plaintiff wrote to R. Killinger, the Nurse Administrator of Attica, requesting to be provided with a pair of Orthopedic boots. Curry explained how his medical boots had been unjustifiably confiscated upon his arrival and how his medical needs were not met inspite of his injury, and how he has been subjected to experience constant pain and discomfort. He also explained how all his requests to be

provided with medical boots had been denyed and / or delayed without a reasonable explanation.

14. Instead of addressing plaintiff's problem personally and ensuring that his medical needs were met on 9-25-2009, Ms. Killinger sent a letter to plaintiff in which once again she directed plaintiff to pursue his medical needs with security and informed plaintiff that" P.A. Schunk is working on these from the medical aspect". But P.A. Schunk never provided plaintiff with his Orthopedic boots.

15. On 10-8-2009, Plaintiff wrote to P.A. Schunk to address his medical concerns. Plaintiff once again wrote to her on 11-9-2009, but as always his medical needs were not met, instead plaintiff continued to be misdirected and his many requests unreasonably denied.

16. Over the course of approximately two an a half years plaintiff has submitted numerous sick-call request slips complaining about the constant pain and discomfort he has been subjected to experience by not having his medical needs met.

17. For approximately two(2) years plaintiff have been provided pain and anti-inflamatory medication Naproxen 500 MG Tab in an attempt to help reduce the pain, discomfort and inflamation of his injured right foot. Although plaintiff submitted two(2) grievances, wrote several letters and numerous Sick-call request slips to the Health Care Unit the above mentioned defendants have completely disregarded his medical condition, have not met his medical needs and negleted his Constitutional rights for two and a half years.

18. Defendant R. Killinger exercised deliberate indifference to plaintiff's health by failing to provide adequate medical care and failure to provide him with his Orthopedic/medical boots which plaintiff need in order to be able to walk and work without experiencing constant pain, discomfort and at times inflamation, instead Ms. Killinger has delayed the process of providing him with his Orthopedic/Medical boots. As a result of the above mentioned deliberate indifference by the defendants to Curry's condition and his medical need to wear medical boots Curry has been suffering severe constant pain, the defendant's negleted his condition and unreasonably delayed the process of receiving adequete medical care. Plaintiff's injured foot is partially paralyzed.

19. Each time plaintiff used the Sick-call procedure and was seen by the Nurse he was told that his request for medical boots was submitted but that there was a possibility that his request would be denied by either R. Killinger, the Nurse Administrator or Jennifer Wrest, RN, NP, allegely due to the economic crisis. When plaintiff was seen by P.A. Schunk she told him that she believed that his request for Orthopedic/Medical boots was going to be denied because the medical boots have to be paid by the State. Furthermore, when plaintiff was seen by Jennifer Wrest, she personally told him that his request for medical boots was being denyed because the economy was in bad shape.

20. Dispite the fact that plaintiff's medical records clearly reflects his need for Orthopedic/medical footwear and

that he has a long history of wearing Orthopedic boots and that he has been examined by many different physicians and foot Doctors which have all acknowledged his injury and concluded that from a medical point of view Curry has a medical need for the Orthopedic footwear. The defendants here at Attica disregarded his medical needs and delayed the provision of his Orhtopedic boots for approximately three(3) long years.

21. Defendants at all times disregarded the fact that Curry has been experiencing severe pain, discomfort and inflamation on his injured foot, his Orthopedic/medical boots were confiscated for no legitimate security reason. For approximately three(3) years plaintiff has been subjected to walk in pain. Curry has been subjected to work in his assigned program wearing a pair of State-issued work boots which are not medically designed to reduce or eliminate the constant pain.

22. In a period of approximately three(3) years of requesting to be provided with his Orthopedic boots plaintiff has only been provided with one(1) pair of insert(insoles) which were given him on 4-9-2008, which have not been sufficient to reduce or eliminate the constant pain, discomfort and inflamation on his injured right foot.

23. Finally, after submitting his second grievance on April 27th, 2010, plaintiff's requests for Orthopedic/medical boots was approved, however, as of this very day defendants have not provided Curry with his Orthopedic boots. Instead the defendants have continued with their attempt to mislead and / or misinform plaintiff in order to justify their delaying tactics and

violation of Curry's Eight Amendment right by claiming in their response to Curry's second grievance "that there is documentation that there may be a nine(9) month delay. This is due to the lenght of the manufacturing process and shipment overseas".

## IN GENERAL

24. In general, defendant's purposely ignored plaintiff's medical needs and negleted those rights. The medical care at Attica Correctional is inadequate and unprofessional. Medical records, vital in assessing the injury on plaintiff's foot and his need for Orthopedic/medical boots were not used to assist diagnoses. Deficiencies are the norms, and plaintiff was unable to receive adequate examination and care upon request.

25. Defendant R. Killinger exercised deliberate indifference to plaintiff's health by failing to provide adequate medical care and providing him with the Orthopedic boots which he needs in order to perform normal activities around the facility and in his assigned job(program) without experiencing constant pain, discomfort and inflamation on his foot.

26. Defendant Jadow Rao exercised deliberate indifference to plaintiff's health by failing to take measures to provide adequate medical care and failing to provide the Orthopedic boots which he needs in order to perform normal activities without experiencing constant pain, discomfort and inflamation.

27. Defendant Jennifer Wrest exercised deliberate indifference to plaintiff's health by failing to provide adequate care and failing to provide Curry's Orthopedic/medical boots

which he needs in order to walk and perform normal activities without experiencing constant pain, discomfort and inflamation.

28. The actions, conduct and attitude of defendant Jadow Rao violated plaintiff's right guaranteed by the Eight Amendment of the United States Constitution to be free from Cruel and Unusual punishment. Dr. Rao as the Head Doctor is held liable for the actions, conduct and attitudes of all the defendants mentioned above. Defendant Rao failed to properly train and supervise his employees and subordinates. His failure to do so led to Curry being subjected to undergo constant pain dispite the fact he was made aware of plaintiff's condition approximately three(3) years in advance.

29. The above mentioned defendants were given the authority to deny, disregard and delay providing plaintiff his precribed Orthopedic/medical boots without any legitimate reasons. As a result, the defendant's deliberate indifference to Curry's medical condition he still suffers severe constant pain on his injured foot, instead of getting better the pain has become worst.

WHEREFORE, Jerome Curry prays for judgment in his favor and damages in his favor against all defendants in the amount sufficient to compensate him for the pain and suffering and mental anguish suffered by him due to the deliberate indifference and intentional misconduct of the defendants, but in no event less than $50,000.00, together with his attorney's fees and costs, and such additional relief as this Honorable Court may deem just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: July 21, 2010

                                          Respectfully Submitted,

                                          Jerome Curry 98-A-6098
                                          Attica Correctional Fac.
                                          P.O. BOX 149
                                          Attica, N.Y. 14011-0149